The People, etc., ex rel. Anson J. Streeter v. Peter Matthews.

1. FRANCHISE—*License To Keep a Dram Shop Is Not.*—The right to license, regulate and prohibit the traffic in intoxicating liquors is found in the police power of the State, and arises out of the nature of the business and its effects upon the public. Such license does not come within any definition of a franchise.

2. DRAM SHOP—*License—Bond—Freeholders.*—The statute does not require that the freehold estate shall be equal in value to the amount of the bond, or shall be of any particular value, and the obligation is not made a lien upon it.

3. SAME—*Bonds—Freehold.*—The term " freeholders of the county" as used in the statute does not embrace persons not of the county, although they may hold a freehold estate in the county, but is intended to designate a class of persons of the county in which the license is granted

4. QUO WARRANTO—*When a Proper Remedy—Dram Shop.*—An information in the nature of a *quo warranto* is a proper proceeding to inquire into the sufficiency of the sureties upon a dram shop keeper's bond.

Memorandum.—Quo warranto. Error to the Circuit Court of Mercer County; the Hon. ARTHUR A. SMITH, Judge, presiding. Heard in

this court at the December term, 1893. Reversed and remanded. Opinion filed May 22, 1894.

The opinion states the case.

J. M. BROCK, state's attorney, and BASSETT & BASSETT, attorneys for plaintiff in error.

PEPPER & SCOTT, attorneys for defendant in error.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

An information in the nature of a quo warranto was filed in the Circuit Court of Mercer County to test the right of defendant in error to keep a dram shop, in pursuance of a license issued to him by the corporate authorities of the village of Windsor, in said county. It was charged that the license was illegal, for the reason that the bond given under the dram shop act was not signed by two good and sufficient sureties, freeholders of said county, and it was alleged that the sureties, Sol. Frohlich and Henry Gardt, were both residents of Knox county, and that neither of them was a freeholder of Mercer county.

The defendant pleaded to the information, admitting that said sureties were, at the time of executing the bond, residents of the city of Galesburg, in Knox county, but averring that they were owners of a lot in Mercer county, and were, therefore, freeholders of the latter county. There was no further pleading, but the parties waived a jury and submitted the cause to the court for trial. The court found for the defendant, and entered judgment against the relator for costs.

A motion was made by the defendant in error in this court to dismiss the writ on the ground that a franchise is involved, and that therefore this court has no jurisdiction. The motion was taken with the case.

The right to license, regulate and prohibit the traffic in intoxicating liquor, is found in the police power of the State, and arises out of the nature of the business and its

effects upon the public. Schwuchow v. Chicago, 68 Ill. 444. The object of the statutes relating to the granting of licenses, is to regulate the business where the local authorities may see fit to permit it and to put it under restraint for the benefit of society and those directly affected by it. The dram shop act is entitled "An act to provide for the licensing of and against the evils arising from the sale of intoxicating liquors." The law merely regulates a business which, in the absence of any statutory enactment, might be carried on by any person. The term franchise is used in the statute in its strict legal sense. C. C. Ry. Co. v. People, 73 Ill. 541; Met. C. Ry. Co. v. Chi. W. D. Ry. Co., 87 Ill. 317; People v. Holtz, 92 Ill. 426; C. & W. I. R. R. Co. v. Dunbar, 95 Ill. 571. A license to keep a dram shop does not come within any definition of a franchise, and the village of Windsor could not confer a franchise. C. C. Ry. Co. v. People, *supra*. The motion to dismiss is overruled.

Section five of the dram shop act provides as follows: "No person shall be licensed to keep a dram shop, or to sell intoxicating liquors, by any county board, or the authorities of any city, town or village, unless he shall first give bond in the penal sum of $3,000, payable to the people of the State of Illinois, with at least two good and sufficient sureties, freeholders of the county in which the license is to be granted, to be approved by the officer who may be authorized to issue the license, conditioned that he will pay to all persons all damages that they may sustain either in person or property, or means of support, by reason of the person so obtaining a license selling or giving away intoxicating liquors."

It was admitted by the plea and shown on the trial that the sureties, Sol. Frohlich and Henry Gardt, were residents of the city of Galesburg in Knox county. On the day that the bond was signed one William T. Hammond, for a consideration of $25, executed to them a statutory quit-claim deed of a lot described as being in Mercer county. Under the statute the deed conveyed all the then existing legal and equitable rights of Hammond, but it did not purport to

convey the lot, and whether he had any rights to convey was not shown.

It is contended for plaintiff in error that the freeholders who become sureties must be of the county in which the license is granted, while on the other hand it is claimed that the legislative intent was merely to require sureties who own a freehold estate situated in the county; that their residence is not material, and that the statute means the same as if it read " freeholders in the county." The statute does not require that the freehold estate shall be equal in value to the amount of the bond, or shall be of any particular value, and the obligation is not made a lien upon it. In this case, what is claimed to be a freehold estate, and to satisfy all the requirements of the law, is of but nominal value. It is evident that the reason for requiring freeholders is not to be found in any security afforded by the freehold, which may be of trifling value. It must have been the intent to secure as sureties a permanent and reliable class of persons, and that object would be promoted by requiring the sureties to come from that class of the people of the county who are freeholders. Provisions with limitations to freeholders have been common in statutes where a similar object was in view, as in cases where the right to act in certain matters or to sit on juries in particular cases has been limited to freeholders. An example is to be found in Chapter 47, Rev. Stat., concerning eminent domain, where the clerk is required to write the names of sixty-four disinterested freeholders of the county on sixty-four slips of paper from which to select twelve jurors. The description there used is freeholders of the county to designate a class of residents of the county. We see no reason to suppose that the same description was used in any different sense in the dram shop act.

The sureties are required by the statute to be good and sufficient, and to be approved as such by the officer who may be authorized to issue the license. In order to enable such officer to determine the question of the goodness and sufficiency of the sureties, and to act intelligently in giving or withholding his official sanction, it is essential that all sources

of information should be accessible to him. He may examine the person offered as security under oath, but that is not the only means or in all cases the best means of ascertaining values of property and pecuniary ability. If the sureties may be residents of distant localities beyond the range of personal knowledge or investigation, the officer would be practically limited to the evidence and estimates of values furnished by them, and powerless to discover or prevent imposition and fraud. It is not to be presumed that such was the intention of the legislature.

We are of the opinion that the term, freeholders of the county, as used in the statute, does not embrace persons not of the county although they may own a freehold estate in the county, but that it is intended to designate a class of persons of the county in which the license is granted, and as the sureties in this case did not fulfill the requirement of the statute in that particular, it will not be necessary to consider any question arising as to the proof of their ownership of a freehold.

The judgment will be reversed and the cause remanded.